UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HAIFAA AL SALEH, LARISA RENAUD,
and HASAN M. KOMEIHA,

      Plaintiffs,

v.                                                  Case No. 06-13372
                                                  Honorable Patrick J. Duggan

District Director, USCIS Detroit, UNITED
STATES DEPARTMENT OF HOMELAND
SECURITY, U.S. ATTORNEY GENERAL,
and FEDERAL BUREAU OF INVESTIGATION,

      Defendants.
_____/

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on March 28, 2007.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                    U.S. DISTRICT COURT JUDGE

Plaintiffs commenced this action in response to Defendants' delay in processing their naturalization applications. In their complaint, Plaintiffs ask the Court to adjudicate their naturalization applications or, in the alternative, remand their cases to the United States Citizenship and Immigration Services ("CIS") for adjudication within a date-certain. Since the filing of their lawsuit, Plaintiffs Al Haifaa Al Saleh and Larisa Renaud have become United States Citizens and thus were dismissed from this lawsuit. Presently before the Court is Defendants' motion to dismiss or, in the alternative, to remand the

1

claims of the remaining Plaintiff, Hasan M. Komeiha (hereafter "Plaintiff"), to CIS. Defendants' motion has been fully briefed.  On March 19, 2007, the Court issued a notice informing the parties that it is dispensing with oral argument with respect to Defendants' motion pursuant to Rule 7.1(e)(2) of the Local Rules for the Eastern District of Michigan. For the following reasons, the Court grants in part and denies in part the motion.

## Factual and Procedural Background

Plaintiff, lawfully admitted to the United States for permanent residence, filed an application for naturalization on July 5, 2005.  A CIS officer interviewed Plaintiff on January 18, 2006, at which time Plaintiff was informed that he passed the English language test and the United States history and government test.  Plaintiff was further informed, however, that a decision on his naturalization application could not be made until the Federal Bureau of Investigation ("FBI") completed a security check.

When the FBI failed to complete its security check by July 26, 2006, and Plaintiff still had not received a decision on his naturalization application, he initiated this lawsuit. On December 12, 2006, Defendants filed the pending motion to dismiss or, in the alternative, to remand.  As of that date, the FBI still had not completed its security check of Plaintiff.

## Defendants' Motion to Dismiss

Defendants seek dismissal of Plaintiff's lawsuit, arguing that the Court lacks subject matter jurisdiction to resolve Plaintiff's claims.  Specifically Defendants argue that the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1447(b), only confers

subject matter jurisdiction upon a district court to adjudicate a naturalization application some time after the FBI completes its background check of the applicant. Section 1447(b) provides:

> If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the *examination* is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

8 U.S.C. § 1447(b) (emphasis added). Defendants argue that the term "examination" in Section 1447(b) refers to the investigative process, including the FBI's security check of an applicant, and until that check is completed, the 120-day period referenced in the section does not begin to run. Plaintiff responds that the term refers to the initial interview of an applicant, which in his case occurred on January 18, 2006– well over 120 days before this lawsuit was initiated.

Neither the Sixth Circuit Court of Appeals nor any other Circuit Court of Appeals has interpreted the meaning of the term "examination" in Section 1447(b). Numerous district courts have decided the issue, although with varying results. Some courts interpret the term as referring to the entire investigation of the applicant; however, the majority of the courts addressing the issue interpret the term to mean the initial interview of the applicant. *See, infra*.

One of the earlier courts to interpret Section 1447(b) concluded that "an examination is not a single event, but instead is essentially a process the agency follows to gather information concerning the applicant" which includes the FBI's security check. *Danilov v. Aguirre*, 370 F. Supp. 2d 441, 443-44 (E.D. Va. 2005).  Therefore, the *Danilov* court held, the "examination" can not be considered complete until after the FBI concludes its background investigation of the applicant.  *Id.*  Adopting the district court's analysis in *Danilov*, a handful of district courts also have held that the 120-day period in Section 1447(b) is not triggered until sometime after the FBI completes its background check.  *See Martinez v. Gonzales*, 463 F. Supp. 2d 569 (E.D. Va. 2006); *Kassemi v. Dep't of Homeland Security*, No. 06-1010, 2006 WL 2938819 (D.N.J. Oct. 13, 2006) (unpublished op.); *Walji v. Gonzales*, No. 06-1165 (S.D. Tex. Oct. 6, 2006) (unpublished op.)(Defs.' Mot., Ex. D); *Damra v. Chertoff*, No. 1:05CV0929, 2006 WL 1786246 (N.D. Ohio June 23, 2006) (unpublished opinion); *Daami v. Gonzales*, No. 05-3667, 2006 WL 1457862 (D.N.J. May 22, 2006) (unpublished op.).  The majority of courts addressing the issue, however, find *Danilov* unpersuasive.

Those courts conclude that the term "examination" in Section 1447(b) refers to the agency's initial interview of the applicant.  *See, e.g., Manzoor v. Chertoff*, – F. Supp. 2d –, 2007 WL 413227 (E.D. Va. Feb. 5, 2007); *Attila v. FBI*, – F. Supp. 2d – , 2007 WL 471124 (S.D. Tex. Feb. 9, 2007); *Khelifa v. Chertoff*, 433 F. Supp. 2d 836 (E.D. Mich. 2006) (cases cited therein); *El-Daour v. Chertoff*, 417 F. Supp. 2d 679 (W.D. Pa. 2005) (cases cited therein); *Zhang v. Chertoff*, No. 05-72121, 2006 WL 4045600 (E.D. Mich.

Feb. 1, 2006) (unpublished op.); *Al Saidi v. Jenifer*, No. 05-71832, 2005 WL 5179147 (E.D. Mich. Dec. 23, 2005) (unpublished op.).[1] In general, these courts reject the *Danilov* court's interpretation of Section 1447(b) for three reasons.

First, the statute's language "that the 120-day period begins to run 'after the date on which the examination is conducted,' implies that there is a specific date upon which the 'examination' occurs." *Hussein*, 2007 WL 328691, at *2 (citing *El Daour*, 417 F. Supp. 2d at 681)(quoting 8 U.S.C. § 1447(b)). The *Danilov* court concluded that the examination is a "process," but "[a] 'process' does not occur on one particular and identifiable date." *El-Daour*, 417 F. Supp. 2d at 681. Second, the preceding section of the INA, 8 U.S.C. § 1446, indicates that the investigative process is separate from the examination. *Hussein*, 2007 WL 328691, at *2 (citing *Daami v. Gonzales*, 2006 WL 1457862, at *5 (D.N.J. May 22, 2006). Third, CIS' regulations contemplate a distinction between the examination and the investigation and reflect the agency's interpretation that the 120-day period in Section 1447(b) begins to run from the date of the initial examination . *Hussein*, 2007 WL 328691, at *2 (citing *Khelifa*, 433 F. Supp. 2d at 841).

---

[1]*See also Hussein v. Gonzales*, No. 306-CV-497J-32MCR, 2007 WL 328691 (M.D. Fla. Jan. 31, 2007) (unpublished op.); *Affaneh v. Hansen*, No. C-3-06-267, 2007 WL 295474 (S.D. Ohio Jan. 29, 2007) (unpublished op.); *Aslam v. Gonzales*, No. C06-614MJP, 2006 WL 3749905 (W.D. Wash. Dec. 19, 2006) (unpublished op.); *Shalabi v. Gonzales*, No. 4:06CV866 RWS, 2006 WL 3032413 (E.D. Mo. Oct. 23, 2006) (unpublished op.); *Daami v. Gonzales*, No. 05-3667, 2006 WL 1457862 (D.N.J. May 22, 2006) (unpublished op.); *Al-Kudsi v. Gonzales*, No. CV-05-1584, 2006 WL 752556 (D. Or. Mar. 22, 2006)(unpublished op.); *Essa v. United States Citizenship and Immigration Services*, No. CIV051449, 2005 WL 3440827 (D. Minn. Dec. 14, 2005) (unpublished op.).

For example, 8 C.F.R. § 335.3(a) states in part: "A decision to grant or deny the application shall be made at the time of the initial examination or within 120-days after the date of the initial examination of the applicant for naturalization under § 335.2." And, contrary to the *Danilov* court's reading, 8 C.F.R. § 335.2(b) requires CIS to conduct the initial examination *only after* the FBI completes its criminal background check of the applicant. "By referring separately to the FBI background check and the 'initial examination,' and mandating that the former must be completed before the latter will be conducted, this provision plainly contemplates that the background check is independent from, as to a part of, the "examination" . . .". *Khelifa*, 433 F. Supp. 2d at 841.

This Court finds the reasoning of the majority of courts persuasive and concludes that the initial interview of the naturalization applicant triggers the 120-day period in Section 1447(b). This period is not tolled while the FBI completes its background investigation of the applicant. In this case, Plaintiff's initial interview occurred on January 18, 2006– more than 120 days before he filed his complaint. Accordingly the Court holds that it has subject matter jurisdiction to adjudicate his claims. Nevertheless, Section 1447(b) grants district courts with jurisdiction over a matter the discretion to either adjudicate the naturalization application in the first instance or remand the matter to CIS to render an initial decision.

### Defendant's Motion to Remand

In almost every case cited previously in which the district court exercised subject matter jurisdiction over the naturalization applicant's lawsuit, it nevertheless declined to

decide the application in the first instance, instead choosing to remand the matter to CIS for prompt resolution or for resolution by a specified deadline. *See, e.g., Khelifa*, 433 F. Supp. 2d at 844-45; *Hussein*, 2007 WL 328691, at *2-3; *Manzoor*, 2007 WL 413227, at *7. One district court provided the following reasoning for declining to render the initial adjudication of the plaintiff's naturalization application:

> . . . a district court, like the USCIS, is not in a position to decide an application for naturalization until the FBI completes the required criminal background investigations. A district court is not equipped to conduct such an investigation to determine if an applicant present any risk to national security or public safety. *El-Daour*, 417 F. Supp. 2d at 684. To conduct a hearing without the completion of a background check "would contravene Congress' intent that an FBI background is to be completed prior to the adjudication of every naturalization application." *Essa v. United States Citizenship & Immigration Service*, No. 05-1449, 2005 U.S. Dist. LEXIS 38803, at *8 (D. Minn. Dec. 14, 2005).

*Shalabi v. Gonzales*, – F. Supp. 2d –, 2007 WL 3032413, at *4 (E.D. Mo. Oct. 23, 2006). Even in a case where the FBI completed its background check of the applicant by the time the district court exercised jurisdiction over the matter, the court declined to adjudicate the application. *Khelifa*, 433 F. Supp. 2d at 843-44. As Judge Rosen of this court reasoned in *Khelifa*, CIS and the federal law enforcement agencies responsible for the investigation of a naturalization applicant "have a great deal more expertise than the Court in both (i) identifying the potentially problematic information that has been uncovered in a background check, and (ii) following up to determine whether this information truly reflects legitimate national security or public safety concerns, or instead

is merely a 'false positive.'" *Id*. at 844.

This Court agrees that it lacks the necessary expertise to make the first assessment as to whether Plaintiff meets all of the various criteria for naturalization. Accordingly, the Court remands Plaintiff's naturalization application to CIS to make a decision on the application. The Court directs CIS to render its decision within 120 days of the date of this Opinion and Order.

Accordingly,

**IT IS ORDERED**, that Defendants' motion to dismiss is **DENIED**;

**IT IS FURTHER ORDERED**, that Defendants' motion to remand is **GRANTED** and the Court remands this matter to CIS to make a decision on Plaintiff's naturalization application within 120 days of the date of this Opinion and Order.

                                             PATRICK J. DUGGAN
                                             UNITED STATES DISTRICT JUDGE

Copies to:
George P. Mann, Esq.
AUSA Susan K. DeClerkq